UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. S3-4:02 CR 529 CDP |
| v. | ) |
| | ) |
| DAVID SARANDOS, | ) |
| | ) |
| Defendant. | ) |

## PLEA AGREEMENT, GUIDELINES
## RECOMMENDATIONS AND STIPULATIONS

Come now the parties pursuant to Section 6B1.4, Sentencing Guidelines and Policy

Statements (October 1987), and the Administrative Order of this Court (January 2, 1991) and

hereby stipulate and agree that the following are the parties' agreements, recommendations and

stipulations:

1.  **THE PARTIES:**

The parties to the agreements, recommendations and stipulations contained herein are the

defendant DAVID SARANDOS, defense counsel DANIEL O. HERRINGTON, and the Office of

the United States Attorney for the Eastern District of Missouri (hereinafter "the government").

This document and the agreements, recommendations and stipulations contained herein do not,

and are not intended to, bind any governmental office or agency other than the United States

Attorney for the Eastern District of Missouri.  It is understood by the parties that the Court is

neither a party to nor bound by these agreements, recommendations and stipulations.

2.    **THE PLEA AGREEMENT**:

A.    **The Plea:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts Four and Five of the Information, the government agrees to move for the dismissal with prejudice as to the defendant of Counts I through XI of Superseding Indictment No. S2-4:02 CR 529 CDP at the time of sentencing. Moreover, the Office of the United States Attorney for the Eastern District of Missouri agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of the Federal Meat Inspection Act, the Poultry Products Inspection Act, and conspiracy to commit violations of those acts, as alleged in Superseding Indictment No. S2-4:02 CR 529 CDP, of which the Office of the United States Attorney for the Eastern District of Missouri is aware at this time.

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant fully understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

B.    **Remedial Order:** The parties recommend that the Court impose the following remedial order: Any business owned, operated, or controlled by the defendant that holds, prepares, packages, or sells meat or meat products, or poultry or poultry products, shall implement and adhere to, for a term of three years following the date of sentencing, a program of food safety compliance approved by an independent and recognized food safety company or

2

institution, acceptable to the Office of the United States Attorney for the Eastern District of Missouri.

C.    **Waiver of Post-Conviction Rights:**

(1)    **Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights to appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.  However, in the event the Court accepts the plea, as part of this agreement, both the defendant and the government hereby waive all rights to appeal all non-jurisdictional issues including, but not limited to:  any issues relating to pre-trial motions, hearings and discovery; any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea; and, whatever sentence is imposed, any issues relating to the establishment of the Total Offense Level or Criminal History Category determined by the Court, except that the parties reserve the right to appeal from any Chapter 5 upward or downward departure from the Guidelines range if such departure is not agreed to in this document.  The parties understand that the District Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document. The Guidelines range will be determined by the District Court and shall not be subject to appeal.

(2)    ***Habeas Corpus:***  The defendant acknowledges being guilty of the crime(s) to which a plea is being entered, and further states that neither defense counsel nor the government have made representations which are not included in this document as to the sentence to be imposed.  The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255,  except for claims of prosecutorial misconduct or ineffective assistance of counsel.

3

D. **Financial Disclosure:**

The defendant agrees to complete and sign financial forms as required by the United States

Probation Office prior to sentencing, including a Net Worth Statement (Probation Form 48); or a

Net Worth Short Form Statement (Probation Form 48 EZ); a Cash Flow Statement (Probation

Form 48B); a Declaration of Defendant or Offender Net Worth and Cash Flow Statements

(Probation Form 48D); and a Customer Consent and Authorization for Access to Financial

Records (Probation Form 48E). The defendant agrees to provide complete, truthful and accurate

information on these forms and consents to the release of these forms and any supporting

documentation by the United States Probation Office to the government. The defendant also

agrees to complete and sign financial forms, including a Customer Consent Authorization for

Access to Financial Records During Supervision (Probation Form 48I), as required by the United

States Probation Office during the defendant's term of supervised release or probation. The

defendant agrees to provide complete, truthful and accurate information on these forms and

consents to the release of these forms and any supporting documentation by the United States

Probation Office to the government.

E. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

The defendant has discussed with defense counsel and understands that nothing contained

in this document is meant to limit the rights and authority of the United States of America to take

any civil, tax or administrative action against the defendant including, but not limited to, asset

forfeiture, deportation and any listing and debarment proceedings to restrict rights and

opportunities of the defendant to contract with government agencies. Further, any

4

recommendation in this document as to the amount of loss or restitution is not binding upon the parties in any civil or administrative action by the government against the defendant.

3.    **GUIDELINES RECOMMENDATIONS (NOT BINDING ON THE COURT):**

A.    **Manual to be Used:**  The parties recommend that the November 2002 version of the Guidelines Manual applies.

B.    **Offense Conduct:**

(1)    **Base Offense Level:**  The parties recommend that the base offense level is six (6) as found in Section 2N2.1(a).

(2) **Chapter 2 Specific Offense Characteristics:**  The parties recommend that the following Specific Offense Characteristics apply:  none.

C.    **Chapter 3 Adjustments:**  The parties recommend that the following adjustments, other than acceptance of responsibility, apply:  two (2) levels should be deducted, pursuant to Section 3B1.2(b), because this defendant was a minor participant.

D.    **Acceptance of Responsibility:**  The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility.

The parties agree that if the defendant does not abide by all of the agreements made within this document, the defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. The parties further agree that the defendant's eligibility for a reduction pursuant to Section 3E1.1 is based upon the information known at the present time and that any actions of the defendant which occur or which become known to the government subsequent to this agreement and are inconsistent with the defendant's acceptance of

5

responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

E.     **Estimated Total Offense Level:** Based on these recommendations, the parties estimate that the Total Offense Level is two (2).

F.     **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court after it reviews the Presentence Report. The Criminal History Category determination will be made only after the United States Probation Office obtains and evaluates the records it can find of the defendant's criminal history. Prior convictions can affect the sentence and usually result in a harsher sentence. Both parties retain their right to challenge the finding of the Presentence Report as to the defendant's criminal history and the applicable category; however, all decisions as to the appropriate Criminal History Category by the Court are final and not subject to appeal.

Both parties are aware that the results of a preliminary criminal record check are available for review in the Pretrial Services Report.

G.     **Acknowledgment of Effect of Recommendations:** These recommendations have been made pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure. The parties have addressed United States Sentencing Guidelines applications to this case and have agreed to these recommendations. The parties agree that these recommendations fairly and accurately set forth the Guidelines levels and calculations which the parties believe the Court should use in determining the defendant's sentence.

The parties acknowledge that the Guidelines application recommendations set forth herein are the result of negotiations between the parties as to the Guidelines applications they address; that these negotiated recommendations led to the guilty plea in this case; and that each party has a right to rely upon and hold the other party to the recommendations at the time of sentencing. The parties further agree that neither party shall request a departure pursuant to any chapter of the Guidelines unless that departure or facts which support that departure are addressed in this document or the request is made with the consent of both parties.

The parties recognize that they may not have addressed or foreseen all the Guidelines provisions applicable in this case. Guidelines applications not expressly addressed by the parties' recommendations, but which are addressed by the Presentence Report or the Court, may be presented to the Court for consideration. The parties agree and understand that the Court, in its discretion, may apply any Guidelines not addressed in this document.

Furthermore, this Court is not bound by these recommendations. The refusal of this Court to follow the recommendations of the parties shall not serve as a basis to withdraw the plea. The parties acknowledge that the Court's decision as to the appropriate Guidelines levels and calculations will govern at sentencing and could vary upward or downward from the parties' recommendations stated in this document and that the Court's decision is not subject to appeal.

## 4.    STIPULATION OF FACTS RELEVANT TO SENTENCING:

The parties stipulate and agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt:

At all relevant times, the defendant P & S Foods, Inc., was a corporation organized and existing under the laws of the State of Missouri, doing business as Pete's Shur-Sav Market at

7

1301 Union Blvd, St. Louis, Missouri 63113 (referred to hereafter as the Union Store) and engaged in the sale of meat and poultry products, among other things.

Prior to March 1999 and until about October 6, 2000, Pete's Market, Inc. was a corporation organized and existing under the laws of the State of Missouri and engaged in the sale of meat and poultry products, among other things, at 5899 Delmar Blvd., St. Louis, Missouri 63112 (referred to hereafter as the Delmar Store).

At all relevant times, Peter Sarandos, Sr., the defendant herein, was the president of P & S Foods, Inc. Prior to March 1999 and until about October 6, 2000, Peter Sarandos, Sr., was the president of Pete's Market, Inc.

At all relevant times, David Sarandos, the defendant herein, was the meat manager of the Union Store.

At all relevant times, Mark Rustemeyer, the defendant herein, was the store manager of the Union Store and reported to Peter Sarandos, Sr.

Prior to March 1999 and until about October 6, 2000, Daniel Carter was the store manager of the Delmar Store and reported to Peter Sarandos, Sr.

From approximately 1998 to April 2000, Darrell Herring, the defendant herein, was a meat cutter at the Union Store and reported to David Sarandos. From approximately April 2000 to at least May 2001, Darrell Herring was the meat manager at the Delmar Store.

At certain times from 1998 to 2000, Warren McCarty was the meat manager at the Delmar Store.

## Inspections at the Delmar Store

8

On or about March 23, 1999, compliance officers from the United States Department of Agriculture, Food Safety & Inspection Service, Compliance & Investigation Division (hereafter USDA) conducted a compliance review at the Delmar Store.  Some of the conditions observed by the compliance officers were:  adulterated ground chuck offered for sale in the meat display case; cooked deli meat, smoked pigtails and Farmland riblets, that were spoiled and covered with mold; dried and sour meat, blood, and bone meal on the meat cutting saw, grinding and blending equipment, and product pans and pots; evidence of rodent-defiled meat and poultry products; trash, debris, and rodent poison in the meat cutting room; rodent droppings in the cooler, retail meat display case, meat tray storage area, and dry storage areas; outside harborage (e.g. trash, debris, and weeds) for rodents; and entryways for rodents (gaps around the cooler and holes leading to the outside).

On or about April 18, 2000, USDA compliance officers observed the following  conditions at the Delmar store:  packages of fresh beef and pork, in various shades of dark red and grey, offered for sale in a meat display case with an elevated storage temperature; smoked pork products, with mold colonies on the product, being offered for sale in the self-service meat case; the meat saw stationed in a non-refrigerated area and covered by a heavy black buildup of blood and product residue on the meat saw from use on previous days; a heavy black buildup of product on components of the grinder, aluminum tubs, and cooler door; rodent droppings in front of the deli case and on shelves where food products were being held for sale; and outside harborage and entryways for rodents.

9

### Inspections at the Union Store

On or about January 31, 2000, USDA compliance officers observed the following conditions at the Union Store: dried meat residue and a grease-soaked cardboard on the floor in the cooler; meat product stored in pans on racks encrusted with meat residue; and the grinder switch encrusted with meat residue.

On or about April 20, 2001, an inspector from the St. Louis City Health Department observed the following conditions at the Union Store: dirty meat slicers; badly damaged and "uncleanable" cutting boards and butcher blocks in the meat department; improper meat handling in the meat department; and food placed under a dripping ceiling at risk for contamination; refrigerators and freezers rusted and in poor repair; and signs of rodent activity and flies in the store.

On or about July 13, 2001, an inspector from the St. Louis City Health Department confirmed that there was a rodent problem in the Union Store and that a customer had seen a mouse running across packages of fresh meat in the retail meat cases.

On or about July 18, 2001, USDA compliance officers observed the following conditions at the Union Store: dead mice; rodent excreta pellets near the meat grinder, smoked meat cooler, and in other areas; and a buildup of ice and frost on the overhead freezer unit and on federally-inspected food products in the freezer.

On or about May 2, 2002, an inspector from the St. Louis Health Department observed the following conditions at the Union Store: stained and scored cutting board; dirty floors, walls, and ceilings in the meat cutting room; two tubs of cut meat sitting on the floor of the meat cutting room; and no thermometers in the meat and dairy cases.

On or about October 8, 2002, an inspector from the St. Louis Health Department observed the following conditions: no drain cover on floor drain in meat cutting room; a hole in the ceiling; dirty display cases; and an unpleasant odor in the store.

On or about April 24, 2003, an inspector from the St. Louis Health Department observed the following conditions at the Union Store: a hole in the ceiling; dirty display cases; and an unpleasant odor in the store.

On all the dates listed, defendants [distributed or attempted to distribute in commerce adulterated meat, that is it was] prepared, packed, or held meat under insanitary conditions whereby it _DLH_ _DOW_ _JJ._ may have become contaminated with filth, or whereby it may have been rendered injurious to health. The meat had been federally inspected.

At all the times described above, the defendants were in responsible positions relative to the meat departments at the Union or Delmar Stores and could have prevented or corrected the insanitary conditions, that may have caused federally inspected   meat and poultry products to become _DLH_ _DOW_ _JJ._ adulterated with filthy, putrid, and decomposed substances or otherwise unsound, unhealthful, unwholesome, or otherwise unfit for human food.

The defendant and the government agree that the facts set forth above are true and may be considered as "relevant conduct" pursuant to Section 1B1.3.

## 5.    ELEMENTS OF THE OFFENSE:

As to Counts Four and Five the defendant admits to violating Title 21, United States Code, Section 601(m)(4), 610(d), and 676(a), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

11

a.     the defendant caused meat or a meat product to become adulterated in that the meat or meat product was prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health;

b.     the meat or meat product was federally inspected;

c.     the meat or meat product had been transported in commerce; and

d.     the defendant was in a responsible position and could have prevented or corrected the violation of federal food laws.

6.   **PENALTIES:**

A.   **Statutory Penalties:**  The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 1 year, a fine of not more than $100,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of 1 year. The government will not seek more than $100,000 in total fines from P & S Foods, Inc, Peter Sarandos, Sr., and David Sarandos DLM DD

B.   **Sentencing Guidelines Effect on Penalties:** The defendant understands that this offense is subject to the provisions and Guidelines of the "Sentencing Reform Act of 1984," Title 18, United States Code, Sections 3661 *et. seq.* and Title 28, United States Code, Section 994.

C.   **Supervised Release:**  The defendant understands that the Court may impose a term of "supervised release" to follow incarceration pursuant to Title 18, United States Code, Section 3583 (Sentencing Guidelines, Chap. 5, Part D).  The defendant further understands that pursuant to the supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions upon the defendant which relate to the crime the defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  The defendant further understands that violation of the conditions of the term of supervised

12

release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

D. **Mandatory Special Assessment:** The defendant further acknowledges that this offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and that the Court is required to impose a mandatory special assessment of $25 per count for a total of $50, which the defendant agrees to pay at the time of sentencing. The defendant further agrees that if the mandatory special assessment imposed by the Court is not paid at the time of sentencing, until the full amount of the mandatory special assessment is paid, money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay the mandatory special assessment.

E. **Possibility of Detention:** The defendant acknowledges that upon entering the plea of guilty as contemplated in this document, the defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

7. **FINES, RESTITUTION AND COSTS:**

The defendant understands that the Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.

A. **Restitution:** The defendant further acknowledges that pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c) committed after April 24, 1996. The defendant agrees that regardless of the particular counts of conviction, any amount of mandatory restitution imposed shall include all amounts allowed by

13

Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty.

At the present time, the parties are not aware of any amount of restitution that is attributable to this defendant.

B. **Effect of Bankruptcy on Fines or Restitution:** The defendant hereby stipulates that any fine or restitution obligation imposed by the Court is not dischargeable in any case commenced by the defendant or the defendant's creditors pursuant to the Bankruptcy Code. The defendant agrees not to attempt to avoid paying any fine or restitution imposed by the Court through any proceeding pursuant to the United States Bankruptcy Code, and stipulates that enforcement o f any fine or restitution obligation by the United States or a victim is not barred or affected by the automatic stay provisions of the United States Bankruptcy Code (Title 11, United States Code, Section 362).

8. **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

The defendant acknowledges and fully understands the following rights: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pre-trial motions, including motions to suppress evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the entire case against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence; and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph. The defendant fully understands that the defendant has the

14

right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 9.   PRESENTENCE REPORT AND SENTENCING:

Following defendant's guilty plea, a Presentence Report will be prepared. At the time of sentencing, the parties reserve the right to allocution regarding the appropriate sentence to be imposed. Each party also reserves the right to bring any misstatements of fact made either by the other party or on that party's behalf to the attention of the Court at the time of sentencing.

## 10.   STANDARD OF INTERPRETATION:

In interpreting this document, any drafting errors or ambiguities shall not automatically be construed against any party, whether or not the party was involved in drafting this document.

## 11.   VOLUNTARY NATURE OF THE PLEA AND THE PLEA AGREEMENT, RECOMMENDATIONS AND STIPULATIONS:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the

15

government, including any Department of Justice attorney, concerning any plea to be entered in this case or the agreements, recommendations or stipulations contained herein. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty. The defendant's agreements, recommendations and stipulations as set forth above are made in exchange for the United States' agreements, recommendations and stipulations set forth in this document.

The defendant acknowledges that the defendant has voluntarily entered into both this plea and these agreements, recommendations and stipulations. The defendant further acknowledges that this guilty plea is made of the defendant's own free will because the defendant is, in fact, guilty of the conduct specified in sections four and five above.

## 12. CONSEQUENCES OF FURTHER CRIMINAL CONDUCT OR WITHDRAWAL OF PLEA BY DEFENDANT:

The defendant agrees that if the defendant engages in any criminal activity between the time of signing this document and the sentencing, the government shall be released from any obligations or limits on its power to prosecute the defendant created by this document, and any such conduct shall be grounds for the loss of acceptance of responsibility pursuant to Section 3E1.1.

Further, by this plea and in the event this plea is ever withdrawn, the defendant waives the protection of Rule 11(f), Federal Rules of Criminal Procedure, and Rule 410, Federal Rules of Evidence.

12-8-03
_____
Date

DOROTHY L. McMURTRY, #6703
JOHN M. BODENHAUSEN, #94806
Assistant United States Attorneys
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

12/8/03
_____
Date

DAVID SARANDOS
Defendant

12/8/03
_____
Date

DANIEL O. HERRINGTON
Attorney for Defendant
2345 Grand Blvd., Suite 2000
Kansas City, MO 64108

17